UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALLANETICS MANAGEMENT COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 13-cv-4359 ) |
| ELIZABETH B. PINCKNEY, Executor of the Estate of Callan Pinckney and CALLAN PRODUCTIONS CORPORATION, | ) Judge John W. Darrah ) ) ) ) |
| Defendants. | ) ) |
| ELIZABETH B. PINCKNEY, Executor of the Estate of Callan Pinckney and CALLAN PRODUCTIONS CORPORATION, | ) ) ) ) ) |
| Counter-Plaintiffs, | ) ) |
| v. | ) ) |
| CALLANETICS MANAGEMENT COMPANY, INC. and PATRICIA KLEIN, | ) ) ) ) |
| Counter-Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

On June 13, 2013, Callanetics Management Company, Inc. ("CMC") filed suit against Elizabeth B. Pinckney, as the executor of the Estate of Callan Pinckney, and Callan Productions Corporation ("Callan Productions"), seeking declarations that Pinckney's Federal Trademark and Service Mark Registrations are to be cancelled by the United States Patent and Trademark Office (the "PTO") and further seeking a declaration of CMC's right to license copyrighted works.

Pinckney and Callan Productions filed an Answer and a Counterclaim against CMC and another individual, Patricia Klein[1], amending it on July 19, 2013. Pinckney and Callan Productions assert claims of trademark infringement, false designation of origin, cybersquatting, copyright infringement, violation of the Illinois Uniform Deceptive Trade Practices Act, and infringement of the right of publicity under Georgia common law against CMC and Klein. Klein moves to dismiss the claims asserted against her; this motion has been fully briefed. For the reasons provided below, Klein's Motion is denied.

## BACKGROUND

The following facts are based on the Amended Counterclaim and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

Callan Pinckney was a resident of Georgia; she died on March 1, 2012. (Am. Counterclaim ¶ 1.) Counter-Plaintiff Elizabeth Pinckney was Callan Pinckney's sister-in-law and is the executor of Callan Pinckney's estate. (*Id.* ¶ 2.) The Estate wholly owns Counter-Plaintiff Callan Productions. (*Id.* ¶ 3.) Counter-Defendant CMC is an Illinois corporation. (*Id.* ¶ 4.) The president and sole employee of CMC is Counter-Defendant Patricia Klein, an Illinois resident. (*Id.* ¶ 5.)

Callan Pinckney developed an exercise method she dubbed "Callanetics" by combining her first name with the suffix "-etics." (*Id.* ¶¶ 9, 12.) Callan Pinckney starred in and published several books and videos relating to the Callanetics exercise method. (*Id.* ¶ 10.) Counter-Plaintiffs own several registered copyrighted works. (*Id.*) The Estate also owns two federally

---

[1] Klein was not a party in the original action but was named a Counter-Defendant in the Counterclaim.

registered trademarks: U.S. Registration No. 1,416,973, used in connection with "educational services, namely conducting courses in physical fitness and exercise" in International Class 41, and U.S. registration No. 3,323,109, for "exercise videos" in International Class 9 and "exercise books" in International Class 16. (*Id.* ¶ 11.)

Callan Pinckney entered into agreements with Metro-Goldwin-Mayer Studios, Inc. ("MGM"), under which MGM published certain copyrighted works in VHS format, under the Callanetics trademark. (*Id.* ¶ 13.) She also contracted with book publishers to publish some of her copyrighted works under and in connection with the Callanetics trademark. (*Id.* ¶ 14.) Some of these videos and books are still being sold. (*Id.* ¶¶ 13-14.)

The Estate asserts it controls all rights of publicity and privacy relating to Callan Pinckney and did not authorize Counter-Defendants to use her likeness or endorsement. (*Id.* ¶ 16.) It further contends Counter-Defendants used the registered marks without authorization or license. (*Id.* ¶ 15.)

The company Callanetics Franchising Corporation ("Callanetics Franchising") was incorporated in the early nineties to manage the franchising of the Callanetics business. (*Id.* ¶ 17.) Callanetics Franchising engaged Counter-Defendants to take over management duties of the Callanetics franchises and granted CMC the option to purchase Callanetics Franchising's assets. (*Id.* ¶ 18.) Callanetics Franchising was dissolved on February 1, 1999. (*Id.* ¶ 19.)

On May 23, 2003, Callan Pinckney's attorney, Marc Bailin, wrote a letter to Klein that purportedly authorized CMC to "negotiate and subject to our prior approval, enter into any written agreements regarding the use of the Callanetics' trade name in connection with the production or marketing of any new Callanetics Exercise videos or media productions related thereto." (*Id.* ¶ 20.) Bailin was not authorized by Callan Pinckney to send this letter to CMC.

3

(*Id.* ¶ 21.) The letter provided that Callan Pinckney had to approve of any marketing and service agreement entered into with CMC; however, Callan Pinckney never approved of any such agreement. (*Id.* ¶ 22.)

In 2008, Counter-Defendants began negotiating with Callan Pinckney about the license of the Callanetics mark, as well as Callan Pinckney's name and likeness; however, no agreement was executed because the parties were unable to agree to final terms. (*Id.* ¶¶ 26-27.) Despite this, Counter-Defendants reproduce and sell the copyrighted works, sell products and services with the Callanetics mark and in connection with the name and likeness of Callan Pinckney. (*Id.* ¶ 27.) Counter-Defendants also registered and use the domain name callanetics.com. (*Id.* ¶ 28.) Callan Pinckney has never received a royalty or any other payment for the use of her intellectual property by Counter-Defendants. (*Id.* ¶ 39.)

Based on these facts, Counter-Plaintiffs allege six counts against CMC and Klein: (I) trademark infringement, (II) false designation of origin, (III) cybersquatting, (IV) violation of the Illinois Uniform Deceptive Trade Practices Act, (V) copyright infringement, and (VI) infringement of the right to publicity under Georgia common law. Klein moves to dismiss the six claims Counter-Plaintiffs allege against her on the basis that Counter-Plaintiffs have failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**LEGAL STANDARD**

To properly assert a claim in a complaint, the plaintiff must present "a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for the relief sought." Fed. R. Civ. P. 8. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007)). While a court is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Iqbal*, 129 S. Ct. at 1949.

A defendant may file a motion to dismiss a claim under Federal Rule 12(b)(6) for failure to state a claim upon which relief may be granted. To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

However, "[w]here the well-settled pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556).

## ANALYSIS

### *Procedural Requirements*

First, Klein moves to dismiss the Counterclaim against her on the basis that she is not a party to the original action and, therefore, cannot be named as a defendant in the Counterclaim. (Mot. ¶ 12.) Klein fails to identify any legal authority or statute to support this assertion.

Fed. R. Civ. P. 13(h) provides that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." It is immaterial "that the counterclaim named additional parties . . . as counterclaim defendants. Rule 13(h) allowed them to be joined pursuant to Rule

20(a)." *Asset Allocation and Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 574 (7th Cir. 1989). Fed. R. Civ. P. 20(a)(2) provides that a person may be joined as a defendant if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Accordingly, because jurisdiction exists over Klein, there was no procedural error in naming Klein as a Counter-Defendant in the Counterclaim, and to the extent Klein argues for dismissal on this basis, her Motion is denied.[2]

*Failure to State a Claim*

Klein further asserts that the claims against her are to be dismissed on the basis that Counter-Plaintiffs have failed to assert personal liability against Klein as a corporate officer. Counter-Plaintiffs respond that the Counterclaim sufficiently alleges Klein personally participated in the infringements and other violations alleged.

In the 1920s, the Seventh Circuit addressed the liability of corporate officers with respect to a corporation's alleged infringement:

> [I]n the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction. . . . It is when the officer acts willfully and knowingly – that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability- that officers are held jointly with the company.

---

[2] Moreover, Klein appears to abandon this position regarding procedural defect in her Reply. *See United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008) ("We have repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (quotation and citations omitted).

*Dangler v. Imperial Mach. Co.*, 11 F.2d 945, 947 (7th Cir. 1926). The Seventh Circuit's holding in *Dangler*, despite its age, "remains the seminal case that establishes the standard for when corporate officers may be held personally liable for intellectual property infringement by their corporation. Although *Dangler* involved patent infringement, its standard has also been applied to trademark and copyright infringement." *Asher Worldwide Enterprises LLC v. Housewaresonly.com Inc.*, Case No. 12 C 568, 2013 WL 4516415, at *3 n.4 (N.D. Ill. Aug. 26, 2013) (citations omitted). While simply being an officer of a corporation is insufficient to confer liability, "[c]ourts that have found the 'special showing' requirement met have generally done so where the individual defendant is either an officer or the sole owner of the infringing entity." *Desmond v. Chicago Boxed Beef Distributors, Inc.*, 921 F. Supp. 2d 872, 886 (N.D. Ill. 2013) (collecting cases).

Here, Counter-Plaintiffs have sufficiently pled facts to support Klein's liability beyond a speculative level. The Counterclaim states Klein is the "president and sole employee of CMC and personally authorized and directed the activities complained of herein." (Counterclaim ¶ 5.) Counter-Plaintiffs further allege that Klein, as the sole employee of CMC, "personally made the decision to manufacture and market products using the Callanetics mark and stood to benefit personally from this unauthorized use of the mark." (*Id.* ¶ 44.) As Klein is the only employee of CMC, it necessarily follows that Klein personally participated in the business decisions of CMC such to survive a motion for dismissal under Fed. R. Civ. P. 12(b)(6).

Counter-Plaintiffs have put forth sufficient factual allegations to support an expectation that discovery may reveal evidence that supports their allegations regarding Klein's liability. *See Brooks,* 578 F.3d at 581. For that reason, Klein's Motion to Dismiss pursuant to Rule 12(b)(6) is denied.

## CONCLUSION

For the reasons set forth above, Counter-Defendant Patricia Klein's Motion to Dismiss [34] is denied.

Date:   December 11, 2013

/s/ John W. Darrah
JOHN W. DARRAH
United States District Court Judge