UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALLANETICS MANAGEMENT COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 13-cv-4359 ) |
| ELIZABETH B. PINCKNEY, Executor of the Estate of Callan Pinckney and CALLAN PRODUCTIONS CORPORATION, | ) Judge John W. Darrah ) ) ) ) |
| Defendants. | ) ) |
| ELIZABETH B. PINCKNEY, Executor of the Estate of Callan Pinckney and CALLAN PRODUCTIONS CORPORATION, | ) ) ) ) ) |
| Counter-Plaintiffs, | ) ) |
| v. | ) ) |
| CALLANETICS MANAGEMENT COMPANY, INC. and PATRICIA KLEIN, | ) ) ) ) |
| Counter-Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

On June 13, 2013, Callanetics Management Company, Inc. ("CMC") filed suit against Elizabeth B. Pinckney, as the executor of the Estate of Callan Pinckney and Callan Productions Corporation ("Callan Productions"), seeking declarations that Pinckney's Federal Trademark and Service Mark Registrations are to be cancelled by the United States Patent and Trademark Office (the "PTO") and further seeking a declaration of CMC's right to license copyrighted works.

Pinckney and Callan Productions filed an Answer and a Counterclaim against CMC and another individual, Patricia Klein[1], amending it on July 19, 2013. Pinckney and Callan Productions assert claims of trademark infringement, false designation of origin, cybersquatting, copyright infringement, violation of the Illinois Uniform Deceptive Trade Practices Act, and infringement of the right of publicity under Georgia common law against CMC and Klein. CMC moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), on the premise that Counter-Plaintiffs' claims are barred by either the doctrine of laches, the applicable statute of limitations, or both. This Motion has been fully briefed. For the reasons provided below, CMC's Motion is denied.

## BACKGROUND

The following facts are drawn from the Verified Complaint and are accepted as true for purposes of this Motion. *See Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

Callan Pinckney was a resident of Georgia; she died on March 1, 2012. (Am. Counterclaim ¶ 1.) Counter-Plaintiff Elizabeth Pinckney was Callan Pinckney's sister-in-law and is the executor of Callan Pinckney's estate. (*Id.* ¶ 2.) The Estate wholly owns Counter-Plaintiff Callan Productions. (*Id.* ¶ 3.) Counter-Defendant CMC is an Illinois corporation. (*Id.* ¶ 4.) The president and sole employee of CMC is Counter-Defendant Patricia Klein, an Illinois resident. (*Id.* ¶ 5.)

Callan Pinckney developed an exercise method she dubbed "Callanetics" by combining her first name with the suffix "-etics." (*Id.* ¶¶ 9, 12.) Callan Pinckney starred in and published several books and videos relating to the Callanetics exercise method. (*Id.* ¶ 10.) Counter-

---

[1] Klein was not a party in the original action but was named a Counter-Defendant in the Counterclaim.

Plaintiffs own several registered copyrighted works.  (*Id.*)  The Estate also owns two federally registered trademarks:  U.S. Registration No. 1,416,973, used in connection with "educational services, namely, conducting courses in physical fitness and exercise" in International Class 41, and U.S. registration No. 3,323,109, for "exercise videos" in International Class 9 and "exercise books" in International Class 16.  (*Id.* ¶ 11.)

Callan Pinckney entered into agreements with Metro-Goldwin-Mayer Studios, Inc. ("MGM"), under which MGM published certain copyrighted works in VHS format, under the Callanetics trademark.  (*Id.* ¶ 13.)  She also contracted with book publishers to publish some of her copyrighted works under and in connection with the Callanetics trademark.  (*Id.* ¶ 14.)  Some of these videos and books are still being sold.  (*Id.* ¶¶ 13-14.)

The Estate asserts it controls all rights of publicity and privacy relating to Callan Pinckney, and did not authorize Counter-Defendants to use her likeness or endorsement.  (*Id.* ¶ 16.)  It further contends Counter-Defendants used the registered marks without authorization or license.  (*Id.* ¶ 15.)

The company Callanetics Franchising Corporation ("Callanetics Franchising") was incorporated in the early nineties to manage the franchising of the Callanetics business.  (*Id.* ¶ 17.)  Callanetics Franchising engaged Counter-Defendants to take over management duties of the Callanetics franchises and granted CMC the option to purchase Callanetics Franchising's assets.  (*Id.* ¶ 18.)  Callanetics Franchising was dissolved on February 1, 1999.  (*Id.* ¶ 19.)

On May 23, 2003, Callan Pinckney's attorney, Marc Bailin, wrote a letter to Klein that purportedly authorized CMC to "negotiate and subject to our prior approval, enter into any written agreements regarding the use of the Callanetics' trade name in connection with the production or marketing of any new Callanetics Exercise videos or media productions related

3

thereto." (*Id.* ¶ 20.) Bailin was not authorized by Callan Pinckney to send this letter to CMC. (*Id.* ¶ 21.) The letter provided that Callan Pinckney had to approve of any marketing and service agreement entered into with CMC; however, Callan Pinckney never approved of any such agreement. (*Id.* ¶ 22.)

In 2008, Counter-Defendants began negotiating with Callan Pinckney about the license of the Callanetics mark, as well as Callan Pinckney's name and likeness; however, no agreement was executed because the parties were unable to agree to final terms. (*Id.* ¶¶ 26-27.) Despite this, Counter-Defendants reproduce and sell the copyrighted works, sell products and services with the Callanetics mark and in connection with the name and likeness of Callan Pinckney. (*Id.* ¶ 27.) Counter-Defendants also registered and use the domain name callanetics.com. (*Id.* ¶ 28.) Callan Pinckney has never received a royalty or any other payment for the use of her intellectual property by Counter-Defendants. (*Id.* ¶ 39.)

Based on these facts, Counter-Plaintiffs allege six counts against CMC and Klein: (I) trademark infringement, (II) false designation of origin, (III) cybersquatting, (IV) violation of the Illinois Uniform Deceptive Trade Practices Act, (V) copyright infringement, and (VI) infringement of the right to publicity under Georgia common law. CMC moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), on the basis that each claim against CMC is barred by the applicable statute of limitations or the doctrine of laches.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings after a complaint and answer have been filed. Dismissal under Rule 12(c) is appropriate where "it appears beyond doubt that the plaintiff cannot prove any facts that would

support his claim for relief." *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012) (quoting *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)).

A court reviewing a Rule 12(c) motion applies the same standard used to review a Rule 12(b)(6) motion. *Pisciotta*, 499 F.3d at 632. Detailed factual allegations are not required, but the claim alleged must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A complaint that invokes a recognized legal theory and contains plausible allegations on the material issues cannot be dismissed." *Intercon Solutions, Inc. v. Basel Action Network*, Case No. 12 C 6814, 2013 WL 4552782, at *24 (N.D. Ill. Aug. 28, 2013) (citing *Richards v. Mitcheff*, 696 F.3d 635, 647 (7th Cir. 2012)).

While a complaint does not have to anticipate an affirmative defense, such as statute of limitations or laches, to survive a motion to dismiss, dismissal is appropriate where the plaintiff "effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006).

## ANALYSIS

### *The Pleadings*

In ruling on a motion for judgment on the pleadings, a court may consider the pleadings alone. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The pleadings include "the complaint, the answer, and any written instruments attached as exhibits." *Id.* Under Fed. R. Civ. P. 10(c), these written instruments, which include affidavits, letters, and contracts, are considered part of the pleadings, provided they are *attached* to the pleadings. *Id.* A motion, however, is not a pleading; therefore, some of the exhibits

attached to CMC's motion for judgment on the pleadings must be excluded from this analysis. Fed. R. Civ. P. 7(a), 12(d). Exhibits 1, 2, and 3 of the Motion, while not properly part of the "pleadings," may be judicially noticed as matters of public record without converting this motion into a summary judgment motion. *See Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (citation omitted). However, Exhibit 4, a sworn declaration from Counter-Defendant Patricia Klein filed in conjunction with the motion, must be excluded.[2]

*Statute of Limitations and Laches Defenses*

Lanham Act Claims and Deceptive Trade Practices Act Claim

Counts I, II, and III of the Amended Counterclaim allege violations of the Lanham Act. "The Lanham Act does not set a statute of limitations . . . but the Seventh Circuit explained in *Hot Wax* that courts should refer 'to analogous state statutes of limitations to determine whether a presumption of laches should apply.'" *Clever Ideas, Inc. v. Citicorp Diners Club, Inc.*, Case No. 02 C 5096, 2003 WL 21982141, at *13 (N.D. Ill. 2003) (quoting *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999)). The three-year statute of limitations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10(a)(e), is applicable to Counts I, II, and III of the Amended Counterclaim.

"The doctrine of laches is derived from the maxim that those who sleep on their rights, lose them." *Clever Ideas*, 2003 WL 21982141, at *11 (internal quotation and citations omitted). The applicability of the laches defense is at the discretion of the court, which must look at all the

---

[2] While court records are frequently judicially noticed, it would be improper to take judicial notice of any facts presented in this exhibit: "[i]n order for a fact to be judicially noticed, indisputability is a prerequisite." *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995); *see* Fed. R. Evid. 201. Here, Counter-Plaintiffs oppose the entry of Exhibit 4, so the facts therein are in dispute. (Resp. at 5 n.1.)

facts and circumstances of the case and balance the equities. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 27 F. Supp. 2d 1043, 1048 (N.D.Ill. 1998), *aff'd*, 191 F.3d 813. For laches to apply here, CMC must show that Counter-Plaintiffs had knowledge of CMC's use of the purportedly infringing mark, that the Counter-Plaintiffs inexcusably delayed in taking action regarding CMC's use, and that CMC would be prejudiced by allowing Counter-Plaintiffs to assert their rights at this point in time. *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792-93 (7th Cir. 2002) (citations omitted).

CMC contends the Counter-Plaintiffs had knowledge of the alleged infringement as early as 1994[3], because, in the Amended Counterclaim, Counter-Plaintiffs assert that Callanetics Franchising contacted Klein and CMC "to take over the management duties related to the Callanetics franchises. In return, [Callanetics Franchising] granted to CMC an option to purchase the assets of [Callanetics Franchising]. CMC did not avail itself of the purchasing option." (Am. Counterclaim ¶ 18.) Though Counter-Plaintiffs, through Callanetics Franchising, had contracted with CMC to manage franchising issues, it does not necessarily follow that Counter-Plaintiffs knew, or should have known beyond a doubt, that CMC was infringing the Callanetics marks.

CMC next contends that Counter-Plaintiffs knew, or should have known, about the infringement by 2003, when Callan Pinckney's attorney sent a letter, authorizing CMC to "negotiate and subject to our prior approval, enter into any written agreements regarding the use of the Callanetics' trade name in connection with production or marketing of any new Callanetics Exercise videos or media productions related thereto." (Am. Counterclaim ¶ 20.)

---

[3] CMC erroneously refers to the original Counterclaim, rather than the Amended Counterclaim (Dkt. No. 16).

First, Counter-Plaintiffs assert the attorney was not authorized to send that letter, and they further allege that Callan Pinckney's prior approval with respect to any marketing or services was never given. (*Id.* ¶¶ 21-22.) Moreover, it is not clear from the pleadings when Counter-Plaintiffs became aware of that letter. Therefore, these allegations are insufficient to establish that Counter-Plaintiffs knew, or should have known beyond a doubt, about CMC's purported infringement.

Further, the pleadings fail to disclose beyond a doubt that Counter-Plaintiffs knew, or should have known, CMC registered the website domain www.callanetics.com, nor is it clear from the pleadings when Counter-Plaintiffs were made aware of the domain. "Since the defense of laches generally requires a fact-intensive inquiry[,] it is usually not amenable to being resolved on summary judgment, let alone on a motion to dismiss" or a motion for judgment on the pleadings. *Flentyne v. Kathrein*, 485 F. Supp. 2d 903, 916-17 (N.D. Ill. 2007) (internal quotation and citation omitted). The Counter-Plaintiffs have not, upon a review of the pleadings, pleaded themselves out of court on this issue; therefore, CMC's Motion for Judgment on the Pleadings as to Counts I, II, and III is denied.

Similarly, Count IV is a violation of the Illinois Uniform Deceptive Trade Practices Act, a statute with a three-year statute of limitations, as discussed above. Like the Lanham Act claims, the pleadings do not demonstrate beyond a doubt when Counter-Plaintiffs knew, or should have known, that CMC was engaged in deceptive trade practices with respect to the Callanetics mark and Callan Pinckney's image and likeness. For that reason, CMC's Motion for Judgment on the Pleadings is denied with respect to Count IV.

Copyright Infringement Claim

Count V of the Amended Counterclaim alleges, on information and belief, CMC reproduced and distributed the Estate's copyrighted works and sold these copies for profit. (Am. Counterclaim ¶¶ 69-70.) The Copyright Act provides that "no civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A claim of copyright infringement accrues "when one has knowledge of a violation or is chargeable with such knowledge." *Scholz Design, Inc. v. Buralli*, Case No. 01 C 3650, 2001 WL 1104647, at *3 (N.D. Ill. Sept. 18, 2001) (citations omitted).

However, in this case, similar to the analysis of the other claims, it cannot be determined beyond a doubt from the pleadings alone when Callan Pinckney or the Counter-Plaintiffs knew, or should have known, of the purported copyright infringement. Callan Pinckney provided in her affidavit that she never authorized CMC to represent her in regards to the sale of her copyrighted videos and never gave CMC permission to reproduce or distribute her videos. (Mot. Ex. 1 ¶¶ 9, 12.) Callan Pinckney further stated that she was contacted by CMC in 2007, through its attorney, to attempt to convince Callan to agree to "continue selling [her] copyrighted videos." (*Id.* ¶ 18.) However, it is unclear from that statement whether or not Callan Pinckney had previously *agreed* to those sales, or if Callan Pinckney was aware that her copyrights were being infringed by CMC at that point in time. Without a clear determination of when the copyright

infringement claim accrued, it is improper to enter judgment on the pleadings, and CMC's Motion is denied as to Count V.[4]

### Right of Publicity Claim

The final claim of the Amended Counterclaim, Count VI, alleges the infringement of the right of publicity under Georgia common law on the part of CMC – specifically, that CMC used Callan Pinckney's name, image, and likeness without license or authorization. Under Georgia law, a claim of this type of tort must be brought within two years after the right of action accrues. *See Rivell v. Private Health Care Systems, Inc.*, 887 F. Supp. 2d 1277, 1284 (S.D. Ga. 2012). However, as stated above, it is not clear beyond a doubt from the pleadings when Callan Pinckney and the Counter-Plaintiffs became aware that her image and likeness are purportedly being used without her permission. Hence, CMC's Motion for Judgment on the Pleadings is denied as to Count VI of the Amended Counterclaim.

### CONCLUSION

For the reasons set forth above, Counter-Defendant CMC's Motion for Judgment on the Pleadings [20] is denied.

Date: December 11, 2013

JOHN W. DARRAH
United States District Court Judge

---

[4] Counter-Plaintiffs further assert that under the continuing violation doctrine, the statute of limitations clock does not begin to run until the entire series of copyright infringement ends. Similarly, Counter-Plaintiffs assert that CMC's alleged violations of the Georgia right to publicity and the Illinois Uniform Deceptive Trade Practices Act continue to this day, such that each claim falls within the requisite statute of limitations. However, because CMC's Motion is denied on the basis that it cannot be determined from the pleadings alone when the claims initially accrued, the issue of continuing violations need not be reached.